UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHAMEEK HARRISON,

                                                      Plaintiff,

    vs.                                                                            9:06-CV-455
                                                                                      (TJM/GJD)

SERGEANT DEVLIN, et al.,

                                                    Defendants.
_____

SHAMEEK HARRISON
99-A-7023
Mt. McGregor Correctional Facility
1000 Mt. McGregor Road
Wilton, New York 12831
Plaintiff *pro se*

Office of the New York State Attorney General      Michael G. McCartin, Esq.
The Capitol      Asst. Attorney General
Albany, New York 12224

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to the undersigned for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

    Plaintiff originally filed his complaint on April 11, 2006, alleging that defendant Devlin used excessive force against plaintiff, and that defendants Wrisley, Terry, and Brown failed to intervene to stop the assault. (Dkt. No. 1). Plaintiff also alleged that he was denied constitutionally adequate medical care after the alleged assault by a defendant, named Nurse Johnson. *Id.* The complaint also named the

Superintendent of Clinton Correctional Facility, Dale Artus, as a defendant. *Id.*

On October 4, 2007, defendant Artus filed a motion for partial summary judgment, and on April 21, 2008, Senior U.S. District Judge McAvoy granted defendant Artus's motion, dismissing him from this action. (Dkt. Nos. 29, 33). Defendants Terry and Nurse Johnson were not served. (Dkt. Nos. 18, 20). Plaintiff was informed by the Court that defendant Terry could not be served because there were several officers named "Terry" at Clinton, and plaintiff would have to give the Marshal's Service more information regarding this officer. (Dkt. No. 18). Plaintiff was also informed by letter sent to the United States Marshal from Clinton that there was no "Nurse Johnson" working at Clinton. (Dkt. No. 20 at 2).

On July 14, 2008, plaintiff filed an amended complaint, adding defendant Terry's first name to the complaint and changing defendant Nurse Johnson to defendant Nurse Kim Bracey. (Dkt. No. 40). Both of these defendants were subsequently served. (Dkt. Nos. 44, 46). Defendant Nurse Bracey has now filed a motion for summary judgment that is presently before the Court for decision. (Dkt. No. 57). Plaintiff has opposed the motion. (Dkt. No. 59). For the following reasons, this court agrees with defendant Bracey and will dismiss the complaint as to her.

## DISCUSSION

1. **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or

inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006)(citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*,

477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**2.    Facts**

Plaintiff's amended complaint is simply a copy of the original with the appropriate name changes. Thus, the court will repeat the facts as stated in Senior Judge McAvoy's order of April 21, 2008.

Plaintiff alleges that on January 26, 2006, while he was incarcerated in the Clinton Correctional Facility, he was involved in an altercation with another inmate. Amended Complaint (AC) ¶ 9 (Dkt. No. 40). As a result of this altercation, defendant Wrisley, who was assigned to security for the area, issued a "red dot code" and "brought the altercation under control." *Id.* Defendants Devlin, Terry, and Brown arrived in response to the "red dot code." *Id.* Plaintiff claims that when defendants Devlin, Terry, and Brown arrived, defendant Devlin began verbally harassing plaintiff. AC ¶ 9(a). Plaintiff states that he responded to defendant Devlin's harassment with some inappropriate language of his own, causing defendant Devlin to strike plaintiff from behind. Plaintiff states that the blow knocked him to the ground. *Id.*

Plaintiff claims that after plaintiff fell, defendant Devlin continued to beat plaintiff with a baton. AC ¶ 9(b). Plaintiff states that as a result of the beating, he suffered multiple bruises on his arms and a fractured hand. Id. Plaintiff alleges that defendants Wrisley, Terry, and Brown merely watched the assault while making jokes about defendant Devlin's actions. AC ¶ 9(c). Finally, plaintiff alleges that although he

was taken to the facility medical clinic, defendant Nurse Bracey only gave plaintiff "a rudimentary examination" and provided him with ice. AC ¶ 9(d). Plaintiff claims that he was taken back to his cell, where he attempted for two days to obtain proper care for his injuries. *Id.* Plaintiff states that he was eventually taken to have x-rays, and it was discovered that his hand was broken, requiring a "splint and cast as well as pain medication." *Id.*

The amended complaint contains three causes of action. The first cause of action is against defendant Devlin for excessive force. The second cause of action is against defendants Wrisley, Terry, and Brown for their alleged failure to intervene in the excessive force incident, and the third cause of action is against defendant Bracey for failing to provide plaintiff with constitutionally adequate medical care. The present motion for summary judgment requests dismissal only as to defendant Nurse Bracey.

3.  **Medical Care**

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d

698, 702 (2d Cir. 1998)).

### A. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the *inadequacy* in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). However, in cases such as this one, where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). Thus, the court in

6

*Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### B. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835-37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839-40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk, however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. Thus, the court stated in *Salahuddin*, that the defendant's believe that his conduct posed no risk of serious

harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 28.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

In this case, the amended complaint states only that after the alleged assault, plaintiff was examined by Nurse Bracey, but that plaintiff was given only a "rudimentary" examination and given ice to reduce the swelling. AC ¶ 9(d). On

October 20, 2008, plaintiff was deposed regarding his allegations against the two "new" defendants. Plaintiff's deposition has been filed as an exhibit to defendant Bracey's summary judgment motion. (Dkt. No. 57-4)(T). At his October 20, 2008 deposition, plaintiff testified that after the altercation, Nurse Bracey gave plaintiff ice and 800 milligrams of Ibuprofen because plaintiff told defendant Bracey that plaintiff's left hand was swollen. (T. 4-6).

Plaintiff testified that the entire encounter with Nurse Bracey lasted for ten minutes. (T. 7). Plaintiff stated that he did not believe at the time that his hand was broken, rather, he just knew the hand was swollen. (T. 8). Plaintiff did not tell Nurse Bracey that he thought his hand or wrist was broken because he is "not a doctor," and it was "for her to decide." (T. 8). Plaintiff was then taken to a keeplock cell. *Id.* Plaintiff testified that the next day, he told Officer Cody that he had to go to "emergency sick call," and that Officer Cody called "down there," but "nothing happened." (T. 9). Plaintiff claimed that Officer Cody told plaintiff that if no one responded, Officer Cody would take plaintiff "down there himself." *Id.*

Plaintiff testified that during the night, the pain lessened a little because he took the pills that he was given by defendant Bracey, but that plaintiff did not sleep well, and his hand was "killing" him. (T. 10). Plaintiff stated that Officer Cody took plaintiff to the Medical Department on January 31, 2006. (T. 11). When plaintiff got to the Medical Department, he saw a doctor that was there, but did not see defendant Bracey. *Id.* Plaintiff could not remember the doctor's name. *Id.* Plaintiff testified that the swelling in his hand had increased, and he was sent for x-rays on January 31,

9

2006. (T. 12).  The x-rays showed that plaintiff's hand was fractured, and he was given a metal splint, secured with an ace bandage. (T. 13).

On February 3, 2006, plaintiff was seen by an orthopedic specialist and a cast was put on his hand. (T. 14).  Plaintiff testified that the first cast caused some discomfort, so another cast was applied at a later date. (T. 14-15).  Plaintiff stated that he was also given some prescription pain medication, but he could not recall the name of the medication or for how long he took it. (T. 15-16).

Nurse Bracey has submitted a declaration in support of her motion, together with copies of plaintiff's medical records. (Dkt. No. 57-5 through 57-11).  The medical records show that Nurse Bracey examined plaintiff after the incident on January 29, 2006. Bracey Decl. Ex. A.  Plaintiff's Ambulatory Health Record (AHR) states that on January 29, 2006, plaintiff was involved in a fight, and that Nurse Bracey examined plaintiff while he was wearing his shorts. *Id.*  There was a scratch on his elbow, his left hand was edematous (swollen), and his left hand hurt with movement. *Id.*  However, the AHR entry for January 29, 2006 also states that there was no deformity, and plaintiff was able to move his fingers and hand with some pain. *Id.* & Bracey Decl. ¶ 6.  Nurse Bracey gave plaintiff some ice, and told him to rest and elevate the hand.  She also noted that plaintiff already had some pain medication in his cell that he could use. *Id.* & Bracey Decl. ¶ 7.  Plaintiff's AHR entries for January 18, 2006 and January 25, 2006 show that he was given refills of Indomethacin[1] and

---

[1] Indomethacin is taken for pain swelling and stiffness associated with arthritis, gout, bursitis, or tendinitis. http://www.webmd.com.

Baclofen[2]. Bracey Decl. Ex. D.

In her declaration, Nurse Bracey states that she did not have any further contact with plaintiff until he came to the Medical Department on January 31, 2006. Bracey Decl. ¶ 9.  The next AHR entry is dated January 31, 2006, and states that plaintiff's left hand was still swollen. *Id.* & Ex. A.  Plaintiff was sent for an x-ray, and his hand was put in a splint and wrapped with an ace bandage by Dr. Snider. *Id.*  The x-rays showed an undisplaced fracture of the 5th metacarpal bone of plaintiff's left hand. Bracey Decl. ¶ 9.  Although plaintiff claimed at his deposition that he did not see defendant Bracey on January 31, 2006, defendant Bracey states that she was the one who ordered the x-ray of plaintiff's hand. *Id.* & Ex. A.  A review of the handwriting and signature on the AHR entries shows that the January 29 and January 31 entries were written by the same individual.

On January 31, 2006, plaintiff was referred to an orthopedic specialist on an "urgent," but not "emergency" basis. Bracey Decl. ¶ 11 & Ex. C.  An "urgent" basis requires the examination within five days. *Id.*  On February 3, 2006, plaintiff was examined by orthopedic specialist Bernard Marco, M.D. Bracey Decl. Ex. E.  Dr. Marco's report states that plaintiff had pain over the ulnar aspect of his left hand, but did not report any other pain. *Id.* at p.1.  There was swelling in plaintiff's left hand and pain upon palpation of the proximal fifth metacarpal bone, but no rotational deformity. *Id.*  The plan was to put plaintiff in a short arm cast. *Id.*

Plaintiff's cast was removed by Dr. Marco on March 12, 2006, and in his report

---

[2] Baclofen is taken as a muscle relaxant. http://webmd.com.

of the same date, Dr. Marco stated that extension of plaintiff's fifth digit was complete, flexion was normal, but there was some tenderness. Bracey Ex. F. An x-ray of the left hand revealed "a good healing on the base of the 5th metacarpal bone." *Id.* Dr. Marco's assessment was that there was "nice improvement" of the fracture, and plaintiff was released to do his "normal activity" with "no restriction." *Id.*

In his response to defendant's motion for summary judgment, plaintiff states that it was "unconscionable" that Nurse Bracey would not have "contemplated" an x-ray at the "moment" that she examined him and that he stated he was in pain. At worst, plaintiff is alleging that Nurse Bracey was negligent and should have recognized that plaintiff's hand could have been broken and ordered an x-ray. This allegation does not meet either the objective or the subjective requirements for a constitutional violation. As stated above, negligence is insufficient to establish a constitutional violation, and plaintiff's disagreement with the care that he received also does not rise to the level of a constitutional violation. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d at 311.

Plaintiff ultimately received medical care, so the "objective element" focuses on the seriousness of the delay. The court first notes that although plaintiff states that Nurse Bracey was responsible for a the delay between January 29 and January 31, it is clear that she was not involved with plaintiff after January 29, until she saw him again on January 31. Plaintiff testified that he asked Officer Cody to get plaintiff medical assistance. Although plaintiff stated that Officer Cody "called" the Medical Department, but no one came, there is no indication that Officer Cody spoke to

12

defendant Bracey, that the defendant was in any way responsible for the alleged delay on January 30, or that defendant Bracey was aware that plaintiff was still in pain until she saw him again on January 31.

In any event, as stated above, when the allegation involves delay, the court must examine the seriousness of the *delay*, not just the seriousness of the condition.[3] Nurse Bracey gave plaintiff ice for the swelling, he had pain medication in his cell, and he was given x-rays on January 31. The doctor's referral to the orthopedic specialist listed the condition as "urgent," but "urgent" meant that the examination could occur within five days. The two day delay in affording plaintiff an x-ray did not affect his injury, the care he received, or the ultimate recovery from his injury. Thus, the delay was not "serious."

There is also absolutely no indication that defendant Bracey was deliberately indifferent to any serious medical need. Even if defendant Bracey had been incorrect in the care that she gave to plaintiff, her error alone would not be sufficient to rise to the level of a constitutional violation. Plaintiff has failed to meet either prong of the Eighth Amendment test, and no reasonable factfinder could find for plaintiff given the evidence in this case.

**WHEREFORE**, based on the above, it is

---

[3] The court would simply note that there are many cases in which broken fingers, without more, have not been considered "serious injuries" sufficient for Eighth Amendment purposes. *See Revenell v. Van Der Steeg*, 05 Civ. 4042, 2007 U.S. Dist. LEXIS 17868, *10-11 (S.D.N.Y. March 14, 2007)(citing cases). Because plaintiff in this case was treated, as stated above, the court has focused on the seriousness of the delay as required by *Salahuddin, supra*. Thus, the court makes no specific finding regarding broken hands or fingers as a matter of law.

13

**RECOMMENDED**, that defendant Bracey's motion for summary judgment (Dkt. No. 57) be **GRANTED**, and the complaint **DISMISSED AS AGAINST DEFENDANT BRACEY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 14, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge